| | |
|---|---|
| MISSOURI COALITION FOR THE ENVIRONMENT FOUNDATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 2:19-cv-4215-NKL ) |
| ANDREW WHEELER, in his official capacity as the Administrator of the United States Environmental Protection Agency, | ) ) ) ) ) |
| Defendant**,** | ) ) |
| and the STATE OF MISSOURI, | ) ) |
| Intervenor-Defendant. | ) |

**INTERVENOR-DEFENDANT STATE OF MISSOURI'S SUGGESTIONS IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Intervenor-Defendant Missouri submits its Cross-Motion for Summary Judgment pursuant to Fed.R.Civ.P 56. Missouri includes with this cross-motion its Statement of Uncontroverted Material Facts ("SUMF"), pursuant to Local Rule 56.1(a), and Suggestions in Support that incorporate Missouri's Suggestions in Opposition to Plaintiff's Motion for Summary Judgment as though fully set forth herein.

## MISSOURI'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Missouri submits the following Statement of Uncontroverted Material Facts ("SUMF") in Support of its Cross-Motion for Summary Judgment, pursuant to Local Rule 56.1(a).

1. On April 13, 2018, the Missouri Department of Natural Resources ("MDNR"), submitted a revised water quality standard ("WQS") to establish statewide numeric nutrient criteria for lakes ("NNC") to the U.S. Environmental Protection Agency ("EPA") for approval pursuant to § 303 of the federal Clean Water Act. (Administrative Record ("AR") Index No. 348, Document ID EPA-HQ-OW-2017-0010-0318, at EPA003145).

2. Before submittal to EPA for approval, Missouri duly adopted the NNC as regulations. (AR Index No. 349, Document ID EPA-HQ-OW-2017-0010-0319, at EPA003149).

3. The Order of Rulemaking containing the NNC was published in the Missouri Register on March 15, 2018. (AR Index No. 351, Document ID EPA-HQ-OW-2017-0010-0321, at EPA003222–34, at EPA003247).

4. The NNC were published in the Code of State Regulations ("CSR") on March 31, 2018. (AR Index No. 348, Document ID EPA-HQ-OW-2017-0010-0318, at EPA003145).

5. The effective date of the regulations was April 30, 2018, but state-proposed water quality standards are not final or valid for Clean Water Act purposes until approved by EPA. (AR Index No. 348, Document ID EPA-HQ-OW-2017-0010-0318, at EPA003145; 33 U.S.C. § 1313(c)).

6. Missouri's WQS submittal contained the necessary supporting information and scientific basis required by the Clean Water Act and by EPA regulations at 40 C.F.R. § 131. (AR Index No. 348, Document ID EPA-HQ-OW-2017-0010-0318, at EPA003146–48; AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004018).

7. Missouri's WQS submittal included an accompanying document that explained in detail the scientific justification for the NNC, titled "Rationale for Missouri Lake Numeric Nutrient Criteria" ("Rationale Document"). (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003150–89).

8. The Rationale Document went through public notice and comment procedures, even though it is not part of the regulation. (See AR Index No. 359, Document ID EPA-HQ-OW-2017-0010-0329, at EPA003670).

9. The Rationale Document provides justification for Missouri's determination that the aquatic life use is the "most sensitive" designated use of Missouri's lakes for Clean Water Act purposes. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003157–58).

10. Missouri developed the NNC using a dataset from over 200 lakes and reservoirs and contained more than 67,000 records spanning 15 years, including more than 32,000 records of chlorophyll and nutrient data. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003164).

11. Unlike many other pollutants regulated by the Clean Water Act, lower levels of nutrients do not automatically correspond with improved water quality or necessarily result in better attainment of designated uses. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003172).

12. Nutrients are inherently non-toxic; phosphorus and nitrogen are nutrients that are essential for the growth and development of organisms. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003172).

13. Regulations governing nutrients cannot be as simple as threshold numeric concentrations, the exceedance of which automatically results in a violation or a finding of

impairment. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003158) (discussing EPA's 2000 national recommendation to states to "adopt both *causal indicators* (the nutrients introduced to the system — especially [Total Nitrogen] and [Total Phosphorus]) and *response indicators* (those measures of biotic productivity and activity reflecting the enrichment of the system including chlorophyll) for nutrient criteria.").

14. At least seven other states utilize EPA-approved NNC that target the response variable chlorophyll as the primary indicator of nutrient enrichment. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003161-62 (citing to regulations in Alabama, Maryland, Minnesota, North Carolina, Oregon, Texas, and Virginia)).

15. The use of a "weight of evidence" approach for nutrients is not new, and has been approved by EPA in the state of Arizona, whose approach is contingent on chlorophyll values to identify violations of narrative nutrient standards for lakes and reservoirs. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003162–63).

16. On December 14, 2018, EPA approved Missouri's NNC. (AR Index No. 361, Document ID EPA-HQ-OW-2017-0010-0331, at EPA004012–14).

17. EPA's approval letter contained a Decision Document Enclosure, a 34-page document fully explaining the procedural background of the rule development, the regulatory approach proposed by Missouri, and EPA's rationale and basis for approval. (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004016–49).

18. The Decision Document Enclosure explained "EPA's determination that [Missouri's] nutrient criteria satisfy all applicable [Clean Water Act] requirements." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004023-26).

19. The Decision Document Enclosure noted that Missouri "submitted sufficient information to evaluate their criteria as required by 40 C.F.R. §§ 131.5 and 131.6" and that Missouri "relied primarily on scientific literature and established correlations between chlorophyll *a* and TN and TP." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004023).

20. EPA concluded in the Decision Document Enclosure that Missouri's criteria support the most sensitive use. (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004023-26).

21. EPA noted that "it is difficult to definitively identify the most sensitive use" in the particular circumstances here, and noted that it was reasonable for Missouri to "focus its numeric nutrient criteria on the protection of applicable aquatic life uses at this time and defer development of numeric criteria specifically tailored to protect recreation and drinking water supply." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004025–26).

22. Because of the difficulty in definitively identifying the most sensitive use, EPA separately "determined that to the extent aquatic life uses are the most sensitive use, the numeric nutrient criteria will provide sufficient protection, and to the extent it becomes evident that water supply or recreational uses are the most sensitive use, [Missouri] can rely on their existing general criteria." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004026).

23. EPA summarized the three components of Missouri's combined criterion approach as including: "Response Impairment Thresholds for chlorophyll *a* which represent a "ceiling" above which a lake is considered impaired (not meeting its aquatic life designated use); Nutrient Screening Thresholds for chlorophyll *a*, [Total Phosphorus], and [Total Nitrogen] which represent a "floor" below which a lake is considered to be attaining its aquatic life designated use; and a set

5

of five Response Assessment Endpoints to determine attainment status in between." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004033).

24. EPA acknowledged that this combined criteria approach "differs from EPA's 2013 Guiding Principles in a number of ways" but that EPA "cannot mandate any specific action, outcome or requirement through guidance," which merely "provide recommendations." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004038).

25. EPA "determined that despite some differences, [Missouri's] criteria are based on a sound scientific rationale and are designed to protect the aquatic life uses." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004038).

26. EPA also noted that "implementation is not within the scope of the EPA's [water quality standards] approval action." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004039-40).

27. The "weight of evidence" approach reduces the uncertainty of lake impairments due to nutrients. The "weight of evidence" approach provides a means to acknowledge the variability of reservoir systems and reduce "concerns" that waters are assessed properly. (*See* AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003159-60).

28. Missouri developed the current criteria to not only identify waters at the ends of the nutrient spectrum (i.e., grossly impaired vs. attaining), but also to determine the status of those lakes in between (the grey-zone) without water chemistry data that clearly indicates impairment or attainment of the aquatic life use. (*See* AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003159–60).

29. The approved criteria provides a framework that identifies clearly impaired waters, but also those where water quality data may not readily show impairment but where the lake is

6

indeed impaired (i.e., a potential "false negative"). (*See* AR Index No. 359, Document ID EPA-HQ-OW-2017-0010-0329, at EPA003683).

30. The framework does so without implicating or impairing those lakes that have fully attained aquatic assemblages, but have elevated nutrient parameters (i.e., a potential "false positive"). This ensures state decisions on water quality (attainment or impairment) are based on sound science, protect the highest attainable aquatic life assemblages, and provide for prudent allocation of state resources. (*See* AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003159–60).

31. Under the CWA Section 304(a), the EPA periodically publishes criteria recommendation for use by states in setting water quality criteria for particular parameters to protect the designated uses for their surface Waters. (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004016-17).

32. States have the option of adopting water quality criteria based on EPA's CWA Section 304(a) criteria guidance, section 304(a) criteria guidance modified to reflect site-specific conditions, or other scientifically defensible methods. (See 40 CFR §131.11(b)(1)). (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004017).

33. In 2011, EPA disapproved Missouri's initial attempt at establishing numeric criteria for lakes. (AR Index No. 332, Document ID EPA-HQ-OW-2017-0010-0302, at EPA002977).

34. The EPA's 2018 decision document, in its procedural background section, noted that EPA's 2011 disapproval specified that Missouri must: (a) "revise the criteria to clearly indicate which designated uses the criteria is intended to protect as well as supporting documentation to indicate that the criteria is fact will fully support the associated use"; (b) "supporting documentation needs to include raw data and resulting statistical analyses so that the EPA may

7

evaluate the soundness of the scientific rational and protectiveness of the criteria pursuant to the requirement found at 40 CFR 131.11(a)(1)." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004017).

35. Missouri provisionally considered developing numeric criteria for the protection of drinking water at a value of 25 micrograms per liter (µg/L) for chlorophyll-*a* based on "analyses of available microcystin data in Missouri lakes" and other information, but believed the information was inadequate for deriving nutrient criteria. (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004025).

36. Missouri "considered the existing information relating to microcystin (a type of cyanotoxin) an determined that the existing information was inadequate for purposes of deriving nutrient criteria…MDNR is in the process of collecting additional data, including data for additional toxins other than microcystin, and believes that 'additional data will help clarify the extent of algal toxins in Missouri's lakes, and combined with continued improvements in our understanding of both the factors that drive toxin production and the efficiencies of treatment in removing algal toxins from source water, will allow the state to better address drinking water protection during a future rulemaking." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004025).

37. EPA noted that "[t]he kind of information to derive numeric nutrient criteria specific to protect recreational uses may include studies on the effects of cyanotoxins on recreational uses. MDNR reviewed the existing information regarding recreational uses and determined that '[r]esearch and information continue to develop at the national level with respect to nutrient impacts and criteria for the protection of recreational uses. Missouri intends to pursue numeric nutrient criteria for recreational designated uses during a future rulemaking. This effort

will allow studies currently underway by EPA and others on the effects of cyantoxins on recreational uses to mature.'" (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004025).

38. "EPA has not published 304(a) recommended criteria, nor provided specific guidance tailored to protect a drinking water supply use, the Agency supports Missouri's position that it needs to collect more data and conduct further analysis before establishing numeric expressions for nutrients in their WQS"… "[t]his is a matter of evolving science." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004025).

39. "[I]n a recent document developed by the Interagency Working Group on the Harmful Algal Bloom and Hypoxia Research and Control Act, EPA is itself 'developing, in collaboration with states, Lake Numeric Nutrient Criteria that will inform how phosphorus and nitrogen concentrations contribute to HAB [Harmful Algal Blooms] and drinking and recreational water criteria and swim advisories." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004025).

40. "After considering the relevant data and its record, the EPA has determined that MDNR's decision to focus on its numeric nutrient criteria on the protection of applicable aquatic life uses at this time and defer development of numeric criteria specifically tailored to protect recreation and drinking water supply is reasonable"…"[g]iven the circumstances here (i.e., that the nutrient criteria are intended to implement, what a wide variety of biota means for manmade lakes, and the lack of data and information relating to other designated uses), it is difficult to definitively identify the most sensitive use." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004025-26).

9

41. Missouri's narrative criteria at 10 CSR 20-7.031(4) provide protections for all waters of the state from "scum, floating surface debris, unsightly color, turbidity, and offensive odor: that would prevent the full maintenance of beneficial uses. (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004026).

42. EPA also noted: "the presence of cyanobacteria blooms can endanger the drinking water supply designated use first by producing cyantoxins that may potentially contaminate improperly treated drinking water, and second, by increasing the amount of organic matter that can cause elevated levels of disinfection byproducts when treated in the drinking water facility. The presence of cyanobacterial blooms may also pose a threat to recreational designated uses." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004026).

43. "Missouri's adopted specific narrative criteria to protect lakes with a drinking water use provides that 'the taste- and odor-producing substances shall be limited to concentrations that will not interfere with the production of potable water by reasonable water treatment processes. 10 CSR 20-7.031(5)(E). (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004026).

44. EPA determined that: "MDNR's existing narratives sufficiently address the types of harm excess nutrients may present to lakes designated for drinking water supply and recreational uses and are available to MDNR if site-specific numeric translations become necessary to protect such uses beyond the protection provided by 10 CSR 20-7.031(5)(N)." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004026).

45. The majority of Missouri's lentic systems are man-made reservoirs. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003154).

46. These water bodies differ from natural lakes in a number of ways that influence nutrient inputs and the response of algal growth relative to those inputs. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003154).

47. These differences include: hydrology (water residence time), coupled with the watershed, sediment load, water level fluctuations, shoreline length, and potential for erosional inputs. . (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003154).

48. Nutrient Screening Thresholds can be used to define the "gray zone" where impairment status remains unclear without a further weight-of-evidence evaluation. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003159, 003181).

49. Results of this "gray zone" assessment can be used to identify reservoirs that are either impaired or those that should receive additional measures to prevent impairments from occurring. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003159, 003181).

50. "This is contrary to long standing science that documents the central role that elevated primary productivity (measured by chlorophyll *a*) plays in protecting aquatic life uses in lakes from adverse effects of nutrient enrichment (USEPA 2000a; USEPA 2013). However, Missouri also includes a separate Response Impairment Threshold for chlorophyll *a*, which operates as a stand-alone criterion. Thus the protectiveness of the Response Impairment Threshold for chlorophyll *a* is a critical component to the protectiveness of Missouri's combined nutrient criterion." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004039).

51. The "Purpose" of the Implementation Plan states "[t]his plan describes how the Department intends to implement nutrient criteria in accordance with the newly revised WQS." (AR Index No. 399, Document ID EPA-HQ-OW-2017-0010-69, at EPA004711).

52. The Implementation plan states: [t]his plan does not prohibit establishing alternative methods of analysis, permit limits, or requirements provided that the alternatives are technically sound, consistent with state and federal regulations, and are protective of water quality"; and "[a]ll permitting will be consistent with federal and state requirements." (AR Index No. 399, Document ID EPA-HQ-OW-2017-0010-03697, at EPA004711).

53. Missouri lakes and reservoirs are more appropriately classified as impoundments and have significantly different physical, chemical, and biological characteristics when compared to naturally developed glacial or mountainous lakes found in other states. (AR Index No. 419, Document ID EPA-HQ-OW-2017-0010-0389, at EPA005054).

54. Missouri's major lakes and reservoirs were constructed primarily for flood control, hydroelectric power, water supply, and recreation. (AR Index No. 419, Document ID EPA-HQ-OW-2017-0010-0389, at EPA005054).

55. The riverine habitats and species that existed before impoundment over time transitioned into the current state of aquatic life dominated by self-sustaining populations of sport and non-sport fishes. (AR Index No. 419, Document ID EPA-HQ-OW-2017-0010-0389, at EPA005054).

56. The more conventional means of biodiversity associated with natural systems do not apply to lakes affected by the rule which were almost entirely constructed within the last 100 years. (AR Index No. 419, Document ID EPA-HQ-OW-2017-0010-0389, at EPA005054-55).

57. There is no naturally occurring condition for these water bodies because it has not reached a state of normalcy. (AR Index No. 419, Document ID EPA-HQ-OW-2017-0010-0389, at EPA005055).

58. In Missouri, data which helps definitively characterize the structure, function, and diversity of all aquatic biota as related to nutrients in reservoirs is limited. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003178).

59. Missouri sport fish data demonstrates that most reservoirs in Missouri provide water quality and habitat suitable for a variety of species. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003178).

60. A positive relation between algal biomass and the health of the apex predators requires these intermediate levels in a food chain to be present and functioning properly. (AR Index No. 419, Document ID EPA-HQ-OW-2017-0010-0389, at EPA005055).

61. EPA noted that : "MDNR reasoned that sport fish are apex predators, and that water quality and habitat conditions that maintain a healthy sport fish population in manmade lakes would necessarily maintain a wide variety of warm, cool, or cold-water biota that serve the food web community for those fish populations, this reasoning holds regardless of habitat type, warm or cold." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004028).

62. "[S]port fish do not directly utilize the energy created by and stored within the algal community," rather, the "energy created via photosynthesis by algae is passed upward through the aquatic food chain." (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003178; AR Index No. 419, Document ID EPA-HQ-OW-2017-0010-0389, at EPA005055-56).

63. Sustaining the health of apex predators requires the intermediate levels in the food web, supported by algal biomass, to be present and functioning properly. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003178).

64. After reviewing the literature and discussions with Missouri reservoir and fishery management professionals, staff from the Missouri Department of Conservation and the University of Missouri, made recommendations for chlorophyll concentrations that would support aquatic life uses in reservoirs. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003178).

65. Missouri Department of Conservation and University of Missouri recommended that for the plains region chlorophyll concentrations be "conservatively set to support sport fisheries rather than maximizing sport fish harvest." (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003178).

66. The use of sport fishery as an aquatic life indicator is ecologically justified because they are apex predators. (AR Index No. 350, Document ID EPA-HQ-OW-2017-0010-0320, at EPA003178).

67. See the following scientific literature supporting States assertion concerning sport fish. (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004028-32; AR Index No. 326, EPA-HQ-OW-2017-0010-0296; AR Index No. 328, EPA-HQ-OW-2017-0010-0298, and AR Index No. 330, EPA-HQ-OW-2017-0010-0300).

68. EPA concluded that "[a]fter considering the relevant science, MDNR determined that the protection of a healthy sport fish population is an appropriate management endpoint for Missouri's manmade lakes for the protection of aquatic life uses from excess nutrients." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004028).

69. EPA summarizes 15 scientific studies that together "demonstrate that, as a general matter, as nutrient levels increase in a lake system, algal growth and fish biomass also increase,

with increasing abundance of most, if not all, fish species. (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004028-31).

70. The studies further demonstrate that "[a]t the time, as overall productivity increases there can be shift in the relative proportion of species present in a lake with benthovore species (e.g. catfish, carp) more able to exploit the increased energy and food sources than piscivore species (e.g. largemouth bass, bluegill, crappie) at some point in the process." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004031).

71. The "available scientific literature does not identify a universal point on the spectrum of algal growth, measured by chlorophyll a, where meaningful shifts in populations would occur in lakes. Rather, the shifts can occur at different levels depending on many other biotic and abiotic factors." (AR Index No. 362, Document ID EPA-HQ-OW-2017-0010-0332, at EPA004031).

## SUGGESTIONS IN SUPPORT

Missouri hereby incorporates its Suggestions in Opposition to Plaintiff's Motion for Summary Judgment as though fully set forth herein. Those suggestions explain why the Court should not only deny Plaintiff's Motion for Summary Judgment, but should also grant summary judgment for the Defendants.

Dated: November 10, 2020

Respectfully submitted,

**ERIC S. SCHMITT**,
Attorney General of Missouri

/s/ *Richard N. Groeneman*
Justin D. Smith, Mo Bar #63253
  Deputy Attorney General – Special Litigation
Timothy Duggan, Mo Bar #27827
  Assistant Attorney General
Richard N. Groeneman, Federal Bar #57157MO
  Assistant Attorney General

Attorney General's Office of Missouri
Post Office Box 899
Jefferson City, MO 65102
Justin.Smith@ago.mo.gov
Tim.Duggan@ago.mo.gov
Richard.Groeneman@ago.mo.gov
(573) 751-0304
(573) 751-9802
(314) 340-7834

*Counsel for Intervenor-Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 10, 2020, the foregoing was filed electronically through the Court's electronic filing system to be served electronically on all parties, and a true and correct electronic copy was further served by email on counsel for all parties.

/s/ *Richard N. Groeneman*
Assistant Attorney General
Federal Bar No. 57157MO